These appeals are taken from three orders made by the court of chancery.
The situation disclosed by the case before us is as follows: The bill was filed in August, 1921. By it the complainants sought to compel the Paterson Safe Deposit and Trust Company, as trustee under the will of one Sarah A. Cooke, to account for property which it had received under the will, *Page 553 
to have a receiver appointed to take charge of the trust funds, and to compel the trust company to make good to the complainants losses which, it was charged, had depreciated the trust property and which had occurred through the dereliction of the trustee. The case remained undisposed of for several years after the filing of the bill, no decree having been entered therein after the completion of the hearing up to the 2d of July, 1924. A few days previous to that date William Beam, representing himself and other cestui que trusts, applied to Vice-Chancellor Griffin, to whom the case had been referred, to reopen the hearing, in order that the complainants might introduce into evidence the testimony taken and the exhibits offered in four different litigations which had been or were pending in the prerogative court, and in which these parties, or some of them, were concerned. This application was refused on the date mentioned, and the order of denial is made one of the subjects of this appeal. At the same time Beam applied to the court to stay the consideration and decision of this cause until the determination of the four cases in the prerogative court already referred to. This application was also denied, and this second order of denial has also been appealed from. On the 6th of August, 1924, Beam applied to the chancellor, asking him to refuse to sign the decree in this case, which had been advised by Vice-Chancellor Griffin early in the preceding month, until the chancellor should examine the proceedings on which that decree was based, and should consider every step in those proceedings, every act of the vice-chancellor and of the various counsel before him, not only in the present case but in the cases which had been tried in the prerogative court before Vice-Ordinary Griffin, and which have already been referred to. The chancellor refused this application, and from the order of refusal the appellants have also taken an appeal.
Taking up the consideration of these several orders in their turn: The refusal of Vice-Chancellor Griffin to reopen the hearing for the purpose of permitting the appellants to introduce into evidence the testimony taken and the exhibits produced in the prerogative court cases was entirely proper. *Page 554 
Conceding that ordinarily a party may have read into the testimony in a pending litigation evidence which has been taken in other cases, but which is relevant to the issues involved in the case being tried, unquestionably it would be grossly improper to permit the whole of the testimony in such cases to be injected into the pending suit, without regard to its competency or its relevancy upon the issues involved in that suit.
As to the second order appealed from: No reason was shown for staying the determination of the present suit until the determination of the litigations in the prerogative court. The present suit was required to be decided upon the issues raised by the pleadings and the testimony offered in support of or against those issues, and its decision could not be affected by the proceedings in, or the decision of, other causes, except perhaps to the extent that in those other causes legal principles were declared which were controlling as to questions involved in this litigation.
As to the third order: It is enough to say that, under the chancery practice, the chancellor signs the decree advised by a vice-chancellor as a matter of course, and we know of no reason which would justify him in refusing to do so unless application has been made to him to sit in review upon the decision of his vice-chancellor. The proposition that he should not only do this, but that he should also consider every act of the vice-chancellor and of the various counsel who had appeared before him, not only in the pending case, but also in the several cases which were tried in the prerogative court before the same judicial officer, is so palpably without legal substance as not to merit discussion
The orders appealed from will each of them be affirmed.
For affirmance — THE CHIEF-JUSTICE, TRENCHARD, PARKER, MINTURN, KALISCH, BLACK, KATZENBACH, CAMPBELL, LLOYD, WHITE, GARDNER, VAN BUSKIRK, CLARK, McGLENNON, KAYS, JJ. 15.
For reversal — None. *Page 555 
 APPENDIX.
NEW JERSEY COURT OF PARDONS.
 In the matter of the creation, powers and prerogatives of the court of pardons.
1. The court of pardons is in no judicial sense a court, and is not so called in the constitution. It was first named a court by act of the legislature in 1853, and the present act (Comp. Stat.p. 3895 § 1) so denominates it
2. The constitution of 1844, article 5, paragraph 10, empowers the governor, or person administering the government, the chancellor and six judges of the court of errors and appeals, or a major part of them, of whom the governor, or person administering the government, shall be one, to remit fines and forfeitures, after conviction, in all cases except impeachment; and in article 2, paragraph 1, granting the right of suffrage, it is provided that no person convicted of crime which then excluded him from being a witness, unless pardoned or restored by law to the right of suffrage, shall enjoy the right of an elector. This latter provision concerning restoration to the right of suffrage is by the constitution made a prerogative of the court of pardone, although not devolved upon it by express terms.
3. The crimes which at the time of the adoption of the constitution of 1844 excluded a convict from being a witness, and, therefore, excluded, and still exclude, him from enjoying the right of an elector, were and are blasphemy, treason, murder, piracy, arson, rape, sodomy, polygamy, robbery, conspiracy, forgery or larceny of above value of $6, perjury or subornation of perjury.
4. The pardoning power is an attribute of sovereignty, and a pardon may be conditional, meaning that mercy may be extended upon terms.
5. The effect of a pardon is to make the offender a new man, to acquit him of all forfeitures annexed to the offense for which he obtains his pardon, not so much to restore his former, as to give him a new credit and capacity.
6. The constitution in article 3, paragraph 1, provides for the distribution of the powers of government into three departments, legislative, executive and judicial, and provides that no person or persons belonging to, or constituting one, of these departments, shall exercise any of the power properly belonging to either of the others, except as therein expressly provided (succession of the president of the senate and speaker of the house of assembly, respectively, to the executive department in certain cases). And the pardoning power in this state is a prerogative of the executive department, and is bestowed by the constitution in article 5 relating to the executive.
7. The granting of a pardon or remission of a penalty under the constitution requires the affirmative vote of a majority of all the judges constituting the court of pardons, of whom the governor, or *Page 556 
person administering the government, must be one. And the power to remit includes the power to remit costs as well as fines and forfeitures.
8. The clause in the constitution empowering the court of pardons to remit fines and forfeitures after conviction, empowers the court to restore to the right of citizenship a person convicted of a crime which deprives him of the right of being an elector, in accordance with article 2, paragraph 1. Semble, that the method of making the restoration is by remitting the forfeiture.
9. A full pardon for an offense operates to restore the right of suffrage where it has been forfeited upon the conviction of crime, and the word "law" in the clause "restored by law to the right of suffrage" means lawful action by the court of pardons and not by the legislature, because the latter being a department of government distinct from the executive, cannot constitutionally encroach upon the power of the executive department by granting a pardon or remitting a forfeiture; and restoration to the right of suffrage is the effect of remission of the forfeiture of the right of being an elector.
10. The power to grant a pardon includes the right to remit part of the penalty without pardoning, and that permits the court of pardons to commute sentences, there being no express words granting that power.
11. A parole is not a pardon. It may be revoked for cause, and the convict is under surveillance by proper officers during the period of parole. It is a prison regulation designed for the benefit of the convict, and that power can be, and has been, bestowed upon other authority as well as on the court of pardons; and, while a parole is not of itself a conditional pardon, nevertheless, the court of pardons has the power in effect to grant a parole, irrespective of statutory authority, by bestowing upon a convict a limited pardon, one with such conditions annexed as are incident to a parole.
12. The present act concerning parole (P.L. 1918 pp. 343, 354;amended, P.L. 1919 p. 222; further amended, P.L. 1923 p. 256), provides that the several boards of managers of the correctional institutions of this state shall have power to release upon parole such inmates as they may determine to be eligible therefor, except persons sentenced to death, and to revoke paroles for cause.